<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STRATEGIC PRODUCTS AND SERVICES, LLC,<br><br>           *Plaintiff,*<br>     v.<br><br>INTEGRATED MEDIA TECHNOLOGIES, INC.,<br><br>           *Defendant.* | Civil Action No. 18-694 (KSH) (CLW)<br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

### I.     Introduction

This matter comes before the Court on the appeal (D.E. 84) of plaintiff Strategic Products and Services, LLC ("SPS") from the order of Magistrate Judge Cathy L. Waldor denying SPS's motion to file a third amended complaint. For the reasons set forth below, Judge Waldor's order is affirmed.

### II.    Background

The facts of this case, as alleged by SPS, are set forth in greater detail in this Court's opinion that denied the motion of defendant Integrated Media Technologies, Inc. ("IMT") to dismiss the second amended complaint. (D.E. 65). Briefly, in 2012, SPS, a software technology company, acquired a video conferencing company called Providea Conferencing, LLC, and hired its president and CEO, Todd Luttinger. SPS later fired Luttinger, who subsequently went to work for IMT, a competitor. A number of other SPS employees who worked in the Providea business unit followed. All told, SPS alleges that IMT poached at least 20 key employees from SPS,

misappropriated its confidential and proprietary business information, and interfered with multiple customer and business relationships. SPS has asserted claims against IMT for tortious interference, misappropriation of confidential information, conversion, and unfair competition.

IMT moved to dismiss the second amended complaint (D.E. 35, SAC), which was filed in July 2018, for lack of personal jurisdiction and subject matter jurisdiction and for failure to state a claim. The Court heard oral argument on the motion on April 16, 2019, and on May 10, 2019, issued an opinion and order denying the motion to dismiss in full. IMT answered the second amended complaint on May 24, 2019. Five months later, on October 25, 2019, SPS moved under Fed. R. Civ. P. 15(a)(2) for leave to file a third amended complaint to add as defendants 16 former SPS employees for their roles in IMT's purported scheme to raid SPS's Providea unit and to assert various contract claims and claims for breach of duty of loyalty against them, as well as to add them to the existing claims for tortious interference with prospective economic gain, misappropriation of confidential information, conversion, and unfair competition brought against IMT.

Judge Waldor denied SPS's motion to amend, reasoning that SPS had not demonstrated good cause under Fed. R. Civ. P. 16(b)(4) to amend beyond the deadline set forth in the initial scheduling order (D.E. 20), and that leave to amend was likewise unwarranted under Fed. R. Civ. P. 15(a)(2) in view of SPS's undue delay and the prejudicial effect on IMT if the motion were granted. (D.E. 82). SPS has now appealed.

### III. Standard of Review

On appeal from a magistrate judge's ruling on non-dispositive matters, which include motions to amend the pleadings, *Patel v. Meridian Health Sys.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)), the

district court must determine whether the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (district judge to "modify or set aside any part of the order that is clearly erroneous or is contrary to law"); L. Civ. R. 72.1(a)(1), (c)(1)(A) (same). Findings of fact are reviewed for clear error and matters of law are reviewed *de novo*. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

A magistrate judge's finding is clearly erroneous if, "although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Wag Acquisition, LLC v. Gattyán Grp.*, 2020 U.S. Dist. LEXIS 157256, at *5 (D.N.J. Aug. 31, 2020) (McNulty, J.) (citation and internal quotation marks omitted). *Accord Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002) (Debevoise, J.). The ruling is "contrary to law" if the magistrate judge "has misinterpreted or misapplied applicable law." *Wag Acquisition*, 2020 U.S. Dist. LEXIS 157256, at *5 (citation and internal quotation marks omitted). The burden is on the appellant to show that the decision was clearly erroneous or contrary to law. *Id.*

**IV.   Discussion**

As Judge Waldor recognized, where leave to amend is sought beyond the scheduling order's deadline to do so, the movant must surmount both Rule 16(b)(4) and Rule 15(a)(2). *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 317, 319 (3d Cir. 2020). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Whether good cause has been shown depends, in part, on the movant's diligence. *See id.* at 319 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84-85 (3d Cir. 2010); *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)).

If good cause has been shown, Fed. R. Civ. 15(a)(2) nonetheless requires, absent the opponent's consent, leave of the court to amend a pleading – which generally should be "freely give[n] . . . when justice so requires." Leave may be denied "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Whether to grant leave to amend is a matter within the Court's discretion. *See, e.g.*, *Race Tires*, 614 F.3d at 85.

Judge Waldor's initial scheduling order was entered on April 23, 2018. (D.E. 20.) Among other deadlines, it set a fact discovery completion deadline of April 19, 2019, and required that motions to add parties or amend pleadings be filed no later than September 30, 2018. (*Id.*) The fact discovery end date was extended (D.E. 54, 70), but the deadline to add parties or amend pleadings was not, nor did SPS ask for it to be. SPS filed its motion for leave to file the third amended complaint on October 25, 2019, more than a year after the deadline in the scheduling order had passed. As such, Judge Waldor properly concluded that SPS had to satisfy Rule 16(b)(4)'s good cause standard.[1]

The evidence also supports her conclusion that SPS's application did not meet that standard. Typically, the inquiry examines whether the movant had, or could have had if

---

[1] The sole case upon which SPS relies to argue against applying Rule 16(b)(4), *In re L'Oreal Wrinkle Cream Mktg. Practices Litig.*, 2015 U.S. Dist. LEXIS 132997 (D.N.J. Sept. 30, 2015) (Falk, Mag. J.), does not compel departure from well-established Third Circuit precedent requiring the rule's application where amendment is sought beyond a scheduling order's deadline to do so. Among other distinctions, in *L'Oreal*, plaintiffs were seeking permission to file a first amended complaint amid the parties' negotiations over a proposed revised scheduling order that would govern the many events remaining in the litigation. Moreover, Magistrate Judge Falk also recognized that amendment would still be appropriate under Rule 16 because plaintiffs had shown good cause.

4

reasonably diligent, the knowledge necessary to move for amendment before the deadline. *See, e.g.*, *Dimensional Commc'ns, Inc. v. Oz Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005); *Natsis v. Turner*, 2020 U.S. Dist. LEXIS 142348, at *16 (D.N.J. Aug. 10, 2020) (Vazquez, J.). As Judge Waldor observed, the second amended complaint named all the employees that SPS proposed to add as defendants in the third amended complaint. Even if SPS found out more about their involvement as discovery progressed (an unsurprising development that no party disputes) it has all along alleged a scheme whereby IMT would excise the Providea business from SPS for its own purposes, using the employees as the vehicle for that transfer of knowledge, relationships, and information.

And the record supports that SPS had sufficient knowledge by at least July 2018 to assert that certain of these employees had breached their obligations to the company. The second amended complaint, which was filed two and a half months before the deadline to add parties and amend pleadings, cites not only the behavior of Teri Bevans,[2] but also the timing and circumstances of the individual employees' departures from SPS and arrival at IMT, as well as the contractual non-solicitation provisions that bound certain of them, Bevans among them. This information actually appears in the record as early as the original complaint. Moreover, the second amended complaint expressly asserts that Bevan and others were encouraged by IMT to, and thereafter did, breach their restrictive covenants. (*See, e.g.*, SAC ¶¶ 41, 46, 53, 57, 72, 81.) Breach of contract claims were ultimately among the causes of action asserted against those employees in the proposed third amended complaint – which was filed over 15 months later.

---

[2] The ruling on appeal mentions the SAC's allegations as to Teri Bevans as an example of SPS's knowledge by the time of the SAC's filing, which, again, occurred well before the amendment and joinder deadline. By using this example, Magistrate Judge Waldor did not, as SPS argues, "impute[] the same knowledge" SPS had regarding Bevans to SPS "for the majority of the proposed individual defendants." (D.E. 84-1, at 3.)

Judge Waldor's ruling was not tantamount, as SPS argues, to requiring it to assert claims based on "mere suspicion"; SPS considered its knowledge sufficient by July 2018 to assert breaches against at least some former employees as support for the causes of action it pleaded against IMT. Although SPS may have wished to await further discovery to file a pleading that included *all* claims against *all* former employees in one shot, that tactical decision does not relieve it of the knowledge it indisputably had as of July 2018 as to the alleged conduct of *some* former employees.

SPS further asserts that most of the discovery on which it relied in drafting its proposed third amended complaint was not produced until June 2019, and that its review of the many thousands of pages IMT finally did produce after significant delays and resistance allowed it to finalize which claims to assert against whom. (*See* D.E. 84-1, at 14; D.E. 87 at 6.) But it admittedly did not alert Judge Waldor until September 2019, a year after the deadline, that it intended to seek amendment, even though it had in its possession months earlier relevant information that would form the basis for at least certain claims and allegations that would dramatically expand this litigation if amendment were permitted. *See Fermin v. Toyota Material Handling, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 56422, at *19 (D.N.J. Apr. 23, 2012) ("While information obtained after a deadline to amend can constitute good cause, that good cause does not extend indefinitely.") (Hammer, Mag. J.).[3]

---

[3] The Court also observes that SPS cited inculpatory emails during the April 2019 oral argument on IMT's motion to dismiss the second amended complaint that had been produced the prior month, further illustrating SPS's knowledge at that point. (*See* 4/16/19 Oral Arg. Tr. 30:23-31:23.) Although SPS contends that IMT had only produced a fraction of its responsive custodial emails by that point (D.E. 87, at 7), it does not satisfactorily explain why it waited another five months beyond that point to even alert Judge Waldor that it would be seeking to assert claims directly against the individual employees based on what it was learning in discovery.

The Court is not unsympathetic to SPS's arguments that IMT has dragged its feet in producing discovery. But under the circumstances, it was not clearly erroneous for Judge Waldor, who, having supervised this case since its inception, was well aware of IMT's intransigence (see, e.g., D.E. 33, 40), to nonetheless conclude that SPS had sufficient knowledge to assert claims against individual employees before the deadline expired.

Finally, even if SPS's decision to belatedly seek amendment could be viewed as sufficiently diligent to meet Rule 16(b)(4)'s good cause standard in view of IMT's discovery delays, Judge Waldor was still well within her discretion to deny amendment under Rule 15(a)(2). "Prejudice may result from an amendment where a party has to change 'tactics or case theories' because of the new claims," or where the amendment would delay the matter's resolution or unnecessarily increase the cost of the litigation. *Stallings v. IBM Corp.*, 2009 U.S. Dist. LEXIS 81963, at *49 (D.N.J. Sept. 8, 2009) (Kugler, J.); *see also Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (considerations include whether amendment would trigger "additional discovery, cost, and preparation to defend against new facts or theories"). Adding 16 individual defendants located around the country to a case that currently, and since its inception, has been prosecuted as a case against those individuals' current employer would necessarily delay resolution of the action, as issues about the sufficiency of the proposed pleading and jurisdictional matters are sorted out, and as IMT and the individual employees reorient themselves as co-defendants with interests that potentially do not align as they previously did.

Moreover, undue delay may warrant denial of an amendment, including where, as here, a movant has had previous chances to amend. *Cureton*, 252 F.3d at 273. The proposed complaint would be the fourth one filed in this action. This Court has already ruled on a prior round of motion practice, including complex issues of personal jurisdiction, following an oral argument

during which the issue of the individual employees not having been named as defendants was raised several times. SPS's counsel said that IMT's document production was in its early stages. But as indicated above, the parties already knew about the purported breach of restrictive covenants by specific employees who were included by name in the second amended complaint filed more than a year earlier. Discovery delays are the only explanation SPS offers for not moving earlier to directly assert claims against these individuals. Judge Waldor was fully within her discretion not to permit what would be a dramatic expansion of this case.

## V. Conclusion

SPS's appeal (D.E. 84) will be denied, and Judge Waldor's ruling (D.E. 82) is affirmed. An appropriate order will issue.

Date: September 30, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.